IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY SHROPSHIRE Individually and as Administratrix of the Estate of RODNEY S. SHROPSHIRE, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> LANCE SHANEYFELT, SR., EURO TRANS, INC. a/k/a EURO-TRANS, INC., GDA LLC, STEVE KASZAS, TQL, INC., a/k/a TOTAL QUALITY LOGISTICS, INC., a/k/a TOTAL QUALITY LOGISTICS, LLC, VOYAGE EXPRESS, INC., and ARTISANS AND TRUCKERS CASUALTY COMPANY (Intervenor Defendant), <br><br> Defendants. | 12cv1657 <br> **ELECTRONICALLY FILED** |

### MEMORANDUM OPINION RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
### (DOC. NOS. 90, 93, 97)

**I. Introduction**

Presently before the Court are three Motions for Summary Judgment filed by: (1) Intervenor Defendant Artisans and Truckers Casualty Company ("Artisans"); (2) Defendant Voyage Express Inc. ("Voyage"); and (3) Defendants Euro Trans, Inc. ("Euro Trans"), GDA LLC ("GDA"), Steve Kaszas ("Kaszas"), Lance Shaneyfelt Sr. ("Shaneyfelt"), and TQL, Inc. ("TQL"). Doc. Nos. 90, 93, and 97, respectively. This case centers on a fatal car accident in 2012. Rodney S. Shropshire died as a result of this accident. Doc. No. 32. The parties dispute the chain of events that led to Mr. Shropshire's death. Mr. Shropshire's widow ("Plaintiff") filed suit, in the Court of Common Pleas of Lawrence County, against various parties because of their alleged liability. Doc. No. 1-2. Defendants removed the case to this Court. Doc. No. 1. Jurisdiction is based upon diversity of citizenship.

Plaintiff alleges the following causes of action (as contained in her Second Amended Complaint):

1. Count I: Negligence against Defendant Shaneyfelt;
2. Count II: Vicarious Liability-Survival Action against Defendants Euro Trans, GDA, Kaszas, Voyage, and TQL;
3. Count III: Negligent Hiring, Retention, Training, and Supervision-Survival Action against Defendants Euro Trans, GDA, Kaszas, Voyage, and TQL;
4. Count IV: Negligent Entrustment-Survival against Defendants Euro Trans, GDA, Kaszas, Voyage, and TQL;
5. Count V: Negligent Maintenance-Survival against Defendants Euro Trans, GDA, Kaszas, Voyage, and TQL;
6. Count VI: Negligence-Wrongful Death against Defendant Shaneyfelt;
7. Count VII: Vicarious Liability-Wrongful Death against Defendants Euro Trans, GDA, Kaszas, Voyage, and TQL;
8. Count VIII: Negligent Hiring, Retention, Training, and Supervision-Wrongful Death against Defendants Euro Trans, GDA, Kaszas, Voyage, and TQL;
9. Count IX: Negligent Entrustment-Wrongful Death against Defendants Euro Trans, Kaszas, Voyage, and TQL;
10. Count X: Negligent Maintenance-Wrongful Death against Defendants Euro Trans, GDA, Kaszas, Voyage, and TQL; and
11. Count XI: Loss of Consortium against all Defendants

Doc. No. 32.

Generally, these Motions for Summary Judgment do not pertain to the exact sequence of the accident at issue, but rather ownership and insurance coverage of the tractor trailer and control and supervision of the driver, Defendant Shaneyfelt. The Court will address the Motions for Summary Judgment, and the issues raised therein, in turn.

**II. Material Facts**

The undisputed material facts of the case are as follows:

An accident occurred on February 14, 2012, in Lawrence County, Pennsylvania, involving both Mr. Shropshire and Mr. Shaneyfelt, who was driving a 2006 Freightliner Columbia 120 (VIN # 1FUJA6CK76DX22447) which was pulling a 2003 Trailmobile 53" Dry Van Trailer (VIN # 2MN01JAH231001486) ("tractor trailer"). Doc. No. 120, ¶ 2. The tractor

trailer was registered to GDA, a commercial carrier engaged in interstate and/or intrastate commerce. Doc. No. 92, ¶¶ 13-17; Doc. No. 120, ¶ 8; Doc. No. 122, ¶¶ 2-3. The tractor trailer had a United States Department of Transportation Number ("US DOT #") and a Motor Carrier Number ("MC#") from Euro Trans, a commercial carrier engaged in interstate and/or intrastate commerce. Doc. No. 120, ¶ 11; Doc. No. 121, ¶ 8. Shortly prior to the accident, GDA leased the tractor trailer to Defendant Kaszas with an option to purchase agreement. Doc. No. 95-3; Doc. No. 120, ¶ 14; Doc. No. 121, ¶ 4. Per the Lease, Kaszas was responsible for the maintenance of the tractor trailer. Doc. No. 121, ¶ 5. GDA would remain the titled owner of the tractor trailer until Kaszas paid the full sum of $50,000.00 to GDA. Doc. No. 92-11; Doc. No. 120, ¶ 17. The full sum had not been paid at the time of the accident. Id. Kaszas is the sole owner of Defendant Voyage, a business engaged in interstate and/or intrastate commerce. At the time of the accident, Voyage was not fully registered with the federal government. Doc. No. 119, ¶ 6.

In February 2012, Kaszas and Euro Trans entered into an Owner Operator Lease Agreement. Doc. No. 119, ¶ 8; Doc. No. 120, ¶ 23; Doc. No. 121, ¶ 10. Kaszas warranted to maintain the tractor trailer. Doc. No. 121, ¶ 11. Euro Trans then entered into an agreement with TQL, a broker, to transport municipal waste from Willimantic, Connecticut (pick-up on February 13, 2012) to Lowellville, Ohio (delivery on February 14, 2012). Doc. No. 120, ¶ 27; Doc. No. 121, ¶¶ 13-14. Euro Trans was identified as an independent contractor. Doc. No. 121, ¶ 15. Defendant Shaneyfelt was listed as the driver for this route. Doc. No. 119, ¶ 13; Doc. No. 120, ¶ 26; Doc. No. 121, ¶ 17. Euro Trans was Shaneyfelt's employer during this time. Doc. No. 119, ¶ 10; Doc. No. 121, ¶ 9.

On February 14, 2012, in Lawrence County, Pennsylvania, an accident occurred between a PennDOT vehicle, a personal vehicle driven by Mr. Shropshire, and a tractor trailer driven by Defendant Shaneyfelt. Mr. Shropshire died as a result of some part of the accident.

**III. Standard of Review**

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994). Disputes must be both (1) material, meaning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party moving for summary judgment has the initial burden of supporting its assertion that the fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that the fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not

4

establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Id.

In reviewing a motion for summary judgment, the Court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

**IV. Discussion**

For clarity, the Court will address the pending Motions for Summary Judgment in the order in which they were filed.

*A.     Intervenor Defendant Artisans' Motion for Summary Judgment (Doc. No. 90)*

On May 21, 2013, Artisans filed a Motion to Intervene. Doc. No. 57. Artisans purported that the purpose of its Motion to Intervene was to seek a declaration from this Court that two insurance policies issued by Artisans to Euro Trans and GDA are inapplicable to the present lawsuit. Id. at 1. Artisans' Motion to Intervene was unopposed and granted by this Court. Doc. No. 72. At issue in Artisans' pending Motion for Summary Judgment, and ripe for this Court's determination, is Artisans' potential insurance coverage of Euro Trans and GDA to fund settlement or satisfy any potential jury verdict in excess of applicable coverage.

Artisans admits that up to $1,000,000.00 of liability coverage is available in the event that Euro Trans and/or Shaneyfelt are found liable. Doc. No. 91, 1; Doc. No. 120, ¶ 4. However, Artisans disputes that any coverage is available under a Commercial General Liability Endorsement issued to Euro Trans ("CGL Endorsement") or a Commercial Automobile Insurance Policy issued by Artisans to GDA ("GDA Policy"). Plaintiff concedes that there is no coverage for the accident under the CGL Endorsement issued to Euro Trans. Therefore, the

Court's sole determination in regards to Artisans is whether there is coverage under the disputed GDA Policy. In sum, Artisans contends that coverage is not available under the GDA Policy.

Artisans contends that coverage is not available, as a matter of law, under the GDA policy because the tractor trailer had been removed from the policy prior to the accident. As relied upon by Artisans, coverage will be provided under the GDA Policy as follows:

> Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto.

Doc. No. 92-3, 12.

"Insured auto" is defined by the policy as:

a. Any auto specifically described on the declarations page; or
b. An additional auto for Part I – Liability To Others and/or Part II – Damage to Your Auto on the date you become the owner if:
    i.   you acquire the auto during the policy period shown on the declarations page;
    ii.  we insure all autos owned by you that are used in your business;
    iii. no other insurance policy provides coverage for that auto; and
    iv.  you tell us within 30 days after you acquire it that you want us to cover it for that coverage.

Doc. No. 92-3, 8.

Subpart (a) of the definition of "insured auto" does not apply because neither the 2006 Freightliner nor the 2003 Trailmobile, which formed the tractor trailer at issue, were listed in the GDA Declarations page. Artisans contends that coverage is not available because the tractor trailer does not qualify as an "insured auto." Plaintiff does not appear to contest this and instead focuses on a MCS-90 Endorsement that was attached to the GDA Policy as required by federal law. Doc. No. 92-4. Artisans argues that the MCS-90 does not apply because GDA was not a

6

"for-hire carrier" but was "simply the title owner of the truck." Doc. No. 91, 8. Artisans also contends that because the declaration sought is a purely legal issue "based on essentially undisputed facts," the Court can rule as a matter of law. Doc. No. 57, ¶ 14. Therefore, the Court's analysis of Artisans' Motion will focus on whether the MCS-90 policy applies; if it applies, Artisans' Motion for Summary Judgment will be denied.

The MCS-90 is a result of the Motor Carrier Act of 1980 ("MCA") that extended deregulation to the trucking industry, which Congress found was unreasonably burdened by state trucking regulation. *Dan's City Used Cars, Inc. v. Pelkey*, ___ U.S. ____ 2013, 133 S.Ct. 1769, 1775 (2013). The MCA is designed to protect the public from risks of interstate trucking. *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009).

The MCS-90, in this case, provides in relevant part that:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route in in any territory authorized to be served by the insured or elsewhere.

Doc. No. 92-4, 1.

The endorsement specifically provides that "this insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident." Id.

As previously stated, Artisans argues that the MCS-90 should not apply because it is not a "for-hire carrier." As noted by both parties, the United States Court of Appeals for the Third Circuit has not addressed this specific issue. Doc. No. 91, 9; Doc. No. 111, 5. Plaintiff and Artisans cite to opinions by the United States Court of Appeals for the Second and Tenth

7

Circuits, respectively, to support their positions. *Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*, 930 F.2d 258 (2d Cir. 1991); *Herrod v. Wiltshire Ins. Co.*, 499 Fed. Appx. 752 (10th Cir. 2012).

Here, the MCS-90 applies. As in *Integral*, GDA and Kaszas entered into a lease with an option to purchase agreement for the tractor trailer involved in the accident, with GDA retaining registration of the tractor trailer until the purchase price was paid in full. In both cases, the purchase price had not been paid in full and therefore, at the time of the accident, the tractor trailer was still owned by GDA and Integral, respectively. Doc. No. 92-11; Doc. No. 120, ¶ 17; *Integral*, 930 F.2d at 260. As stated by the United States Court of Appeals for the Second Circuit, MCS policies reflect Congress' "intention to furnish indemnification even where the insured carrier is adjudged only vicariously liable for the negligence of another." *Integral*, 930 F.2d at 261. In other words, it is not necessary for the jury to find that the insured was responsible for "the negligent operation, maintenance or use of the motor vehicle." Id. at 260.

Artisans argues that the MCS-90 does not apply because GDA was not a "for-hire motor carrier" at the time of the accident. At this time the Court is not aware of any binding precedent that requires that the Court definitively rule that GDA was/was not a "for-hire motor carrier." Artisans points out that: GDA did not receive any compensation for the trip Shaneyfelt was completing at the time of the accident; it did not have any dealings with the tractor trailer after it entered into the lease purchase agreement with Kaszas; and it was "simply a lessor of equipment." Doc. No. 91, 12. However, GDA still owned the vehicle in question; GDA's sole shareholder, George Ardeus, knew that the tractor trailer would be used in interstate commerce to earn money to pay off the complete purchase price; and the tractor trailer was registered to GDA. Therefore, GDA engaged as a "for-hire motor carrier" when it leased the tractor trailer in

8

question for use in transporting goods in interstate commerce. See Doc. No. 111, 6. The complex nature of the leasing and titling of this tractor trailer does not negate GDA's ownership of the vehicle at the time of the accident. As such, the MCS-90 endorsement at issue applies and Artisans' Motion for Summary Judgment (Doc. No. 90) will be DENIED. The Court agrees with Artisans that the MCS-90 will only apply to satisfy a final judgment against Defendant GDA. See 49 C.F.R. Part 387, 70 F.R. 58065-01 (Oct. 5, 2005).

      B.      *Defendant Voyage's Motion for Summary Judgment (Doc. No. 93)*

Defendant Voyage contends that it must be dismissed as a Defendant because there is not enough evidence of its connection to either Mr. Shaneyfelt or the tractor trailer such that any reasonable jury could find it liable by a preponderance of the evidence. Doc. No. 94, 3. The basis of Voyage's argument and Plaintiff's opposition is the relationship between Defendants Kaszas and Voyage and whether Kaszas acted as an individual or on behalf of Voyage when he: (1) executed a lease with the option to purchase the tractor trailer from GDA and (2) transferred the tractor trailer to Euro Trans. This analysis is unique because Plaintiff does not attempt to hold the sole shareholder liable for actions undertaken by the corporation, but rather, attempts to hold a corporation liable for the actions of the sole shareholder.

First, the Graves Amendment, 49 U.S.C. § 30106, does not bar Voyage as a Defendant in this case because Voyage was not "engaged in the trade or business of renting or leasing motor vehicles." The Amendment is designed to protect businesses that lease motor vehicles, more akin to commercial lenders/rental companies, rather than trucking companies that happen to occasionally sell or lease motor vehicles. *See generally Carton v. General Motors Acceptance Corp.*, 639 F. Supp. 2d 982 (N.D. Iowa 2009).

9

Secondly, there is sufficient evidence to support a finding of liability against Voyage because of its connections with Defendant Shaneyfelt and the tractor trailer. Kaszas is the sole owner and office holder of Voyage. Doc. No. 106, ¶ 19. Plaintiff has presented evidence that: (1) "Steve Kaszas/Voyage Express" was the identified lessor on a 2011 Truck Lease and Service Agreement between Kaszas and C&I Trucking; (2) Kaszas deposited the money from the Euro Trans deal into a Voyage Charter One bank account; (3) Defendant Shaneyfelt was paid with paychecks issued from Voyage's bank account; (4) the tractor trailer at issue was covered by an insurance policy issued to Voyage; (5) a check for damage to the tractor trailer was issued to Voyage; (6) the tow company, Preston America, was paid for removal and storage of the tractor trailer from Voyage's bank account. Doc. No. 106, ¶¶ 3-4, 7, 10, 12, 21.

Thus, a reasonable conclusion is that, if at all possible, the lease with purchase option would have been executed between GDA and Voyage, rather than GDA and Kaszas. Indeed, Kaszas was in the process of securing the necessary paperwork to permit Voyage to resume business. Doc. No. 95, ¶ 7. Further, Shaneyfelt became an employee of Voyage after the accident. All of these facts, when viewed in the light most favorable to Plaintiff, supports a conclusion that the business conducted by Voyage and Kaszas, related to the tractor trailer and Shaneyfelt, were indistinguishable.

In sum, there is sufficient evidence both that Voyage should remain a Defendant to this action and that a reasonable jury could find it vicariously liable for Shaneyfelt's actions. As such, Defendant Voyage's Motion for Summary Judgment (Doc. No. 93) will be DENIED and Voyage will continue as Defendant in this action.

C. *Euro Trans, GDA, Kaszas, Shaneyfelt, and TQL's Motion for Summary Judgment (Doc. No. 97)*

The core of Plaintiff's claims is Defendant Shaneyfelt's negligent operation of the tractor trailer at issue, which she alleges caused her husband's death. The liability of Defendants Euro Trans, GDA, Kaszas, and TQL are all premised on their ownership, maintenance, supervision or control of Shaneyfelt and/or the tractor trailer. Specifically, Plaintiff contends that these Defendants are vicariously liable for negligently hiring, retaining, and supervising Shaneyfelt, negligently entrusting the tractor trailer to Shaneyfelt, and/or negligently maintaining the tractor trailer. Plaintiff also seeks punitive damages.

In their collective Motion for Summary Judgment, Defendants GDA, Kaszas, and TQL, seek summary judgment in their favor on all claims and that Plaintiff's Complaint, including claims for punitive damages, be dismissed with prejudice. Defendants Shaneyfelt and Euro Trans seek summary judgment in their favor solely as to Plaintiff's claims for punitive damages. The Court will address these arguments in turn.

    *i.*    *Defendant GDA*

      a. *Negligent Maintenance*

There are genuine issues of material fact as to liability related to the maintenance of the tractor trailer. See Doc. No. 102, ¶¶ 16-23. GDA leased the tractor trailer to Kaszas just over one month prior to the accident. Plaintiff has presented evidence that the tractor trailer had "serious" deficiencies immediately after the accident occurred. Doc. No. 95-3; Doc. No. 120, ¶ 14; Doc. No. 121, ¶ 4. A reasonable conclusion is that GDA negligently maintained the tractor trailer and should not have leased it to Kaszas in its condition. Further, no inspection of the tractor trailer occurred prior to Kaszas' possession of the vehicle and, despite any delegation of

maintenance in the parties' lease purchase agreement, GDA was still the registered owner of the tractor trailer at the time of the accident. Doc. No. 102, ¶ 13. Therefore, a reasonable jury could find GDA liable for negligent maintenance and GDA's Motion for Summary Judgment will be DENIED in this respect.

### b. Graves Amendment

GDA argues, in the alternative, that it is immune from Plaintiff's claims under 49 U.S.C. § 30106, commonly known as the Graves Amendment. Doc. No. 100, 4-6. The Graves Amendment provides a basis for vehicle renters and lessors to move to dismiss vicarious liability claims in motor vehicle accident lawsuits. 49 U.S.C. § 30106. As GDA notes, no Pennsylvania state or federal appellate court has interpreted the Graves Amendment. The Court declines to find that the Graves Amendment applies in this case, where the Defendant GDA was not a commercial lender or commercial car/truck rental company. GDA's status in the present case is distinguishable from the Defendant in *Buzzerd v. Flagship Carwash of Port St. Lucie*, 2009 WL 269990 (M.D. Pa. Jan. 16) (Vanaskie, J.), U-Haul, which is a commercial car/truck rental company.

Plaintiff has advanced claims against GDA that are supported by evidence. The Graves Amendment does not apply. Therefore, GDA's Motion for Summary Judgment will be DENIED in this respect.

### c. Negligent Hiring, Retaining, and Supervision; Negligent Entrustment; and Vicarious Liability

Plaintiff has no objection to GDA's Motion for Summary Judgment on the remaining claims of negligent hiring, retaining, and supervision; negligent entrustment; and vicarious

12

liability. Therefore, GDA's Motion in these respects will be GRANTED WITHOUT OBJECTION.

### B. Defendant Kaszas

Kaszas contends that Plaintiff has not presented sufficient evidence to sustain claims against him for: negligent maintenance, negligent hiring, retaining, and supervision, negligent entrustment, or vicarious liability.

#### i. Negligent Maintenance

Kaszas concedes that he was responsible for the maintenance of the tractor trailer under the terms of the Owner Operator Motor Vehicle Lease Agreement. However, he argues that Plaintiff has not produced any evidence that the tractor trailer was not properly maintained. This is not the case. Plaintiff has presented evidence of the tractor trailer's deficiencies, including a tire without sufficient tread. Doc. No. 102, ¶ 16; Doc. No. 104, 17-38. Shaneyfelt stated during his deposition that a properly conducted pre-trip inspection would have revealed the deficiencies. Doc. No. 104, Exhibit 4 at T145. Therefore, because Plaintiff has presented sufficient evidence that the tractor trailer was negligently maintained, Kaszas' Motion for Summary Judgment will be DENIED in this respect.

#### ii. Negligent Hiring, Retaining, and Supervising

Kaszas argues that he cannot be liable because he did not have a master-servant relationship with Shaneyfelt. Specifically, Kaszas contends that no such relationship existed because he did not have the ability to control Shaneyfelt or communicate with him regarding delivery. Plaintiff has presented evidence that supports its contention that Kaszas had control over Shaneyfelt. This evidence, viewed in the light most favorable to Plaintiff, demonstrates that Kaszas: (1) was responsible for providing "competent and reliable employees" to Euro

13

Trans; (2) was responsible for Shaneyfelt's payment; (3) retained control over which loads would be hauled for Euro Trans; (4) was able to discharge Shaneyfelt; (5) was tasked with "control[ing] and direct[ing] the employees he furnished;' and (6) referred to Shaneyfelt as his employee in an insurance claim in connection with the accident. Doc. No. 99-5; Doc. No. 104, Exhibit 4 at T59; Doc. No. 104, Exhibit 13 at T78-79; Doc. No. 104, Exhibit 15. Based on this evidence, a reasonable conclusion is that Kaszas and Shaneyfelt had a master-servant relationship. Much of this evidence is disputed (ex. whether Shaneyfelt's inaccurate log book entries were the result of mistake or intentional falsification). Doc. No. 126, 2-3. At this stage, the Court will not weigh the evidence before it to determine a defendant's liability. The sole determination before the Court is if Plaintiff has advanced sufficient evidence to proceed to trial. Because there are genuine issues of material fact in dispute and a reasonable jury could conclude that Kaszas and Shaneyfelt had a master-servant relationship, this claim must be decided by a jury. Therefore, Kaszas' Motion for Summary Judgment will be DENIED in this regard.

### iii. *Negligent Entrustment*

Kaszas contends that there is no evidence that he knew, or should have known, that Shaneyfelt "intended or was likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Doc. No. 100, 8 quoting Restatement (Second) Torts § 308; *Ferry v. Fisher*, 709 A.2d 399 (Pa. Super. 1998).

However, Plaintiff has presented evidence that less than a year prior to the instant accident, Shaneyfelt had a similar accident in which he rear-ended a vehicle. Doc. No. 102, ¶ 62; Doc. No. 104, Exhibit 18. As a result of that accident, Shaneyfelt was cited for not following at a safe distance and assessed four (4) points against his Virginia driver's license. Doc. No. 104,

Exibit19. He was also cited for false log books. Doc. No. 104, Exhibit 22. Kaszas was aware of this accident. Doc. No. 104, Exhibit 13 at T48. While employed by Kaszas on a C&I Trucking job, Shaneyfelt was taken out of service after a citation for falsifying a log book entry. Doc. No. 104, Exhibit 4 at T63-64. Plaintiff has also submitted evidence that Shaneyfelt falsified his log books and operated in excess of the hours of service permitted up to and including the date of the accident. Doc. No. 104, Exhibit 4, 200-205.

Therefore, sufficient evidence has been presented to submit this claim to the jury. Kaszas' Motion for Summary Judgment will be DENIED in this regard.

### iv. *Vicarious Liability*

Kaszas argues, without elaboration, that he cannot be vicariously liable for Shaneyfelt's actions because there was no master-servant relationship. Doc. No. 100, 9. Because of the Court's ruling on Plaintiff's other claims against Kaszas, the Motion for Summary Judgment as to vicarious liability will be DENIED.

### C. *Defendant TQL*

#### i. *Negligent Hiring, Retaining, and Supervision*

TQL argues that there was no master-servant relationship between it and Defendant Shaneyfelt at the time of the accident to sustain a claim for negligent hiring, retaining, and supervision. Doc. No. 100, 9-11. Both parties cite *Schramm v. Foster*, 341 F. Supp. 2d 536 (D. Md. 2004) to support their positions.

Plaintiff's claims against TQL are based upon the Broker/Carrier Agreement entered into between TQL and Euro Trans. Doc. No. 99-8. Euro Trans was listed as an "independent contractor." Doc. No. 121, ¶ 15. This Agreement required Euro Trans to maintain a "Satisfactory" DOT safety rating and specified that if Euro Trans had a DOT safety rating other

15

than "Satisfactory" that could be grounds for TQL to immediately terminate the Agreement. Doc. No. 102, ¶ 85. Plaintiff contends that Euro Trans' DOT safety rating at the time of the accident was "Conditional" and therefore, TQL was negligent because it continued the Agreement between itself and Euro Trans despite this lower rating. Doc. No. 104-4. In other words, viewing the evidence presented in the light most favorable to Plaintiff, if TQL had completed its due diligence and terminated the Agreement with Euro Trans because of its "Conditional" DOT safety rating, Defendant Shaneyfelt, who himself had driving safety issues, would not have been driving the route brokered through TQL and prescribed by Euro Trans. Evidence reasonably supports a conclusion that TQL controlled aspects of Euro Trans operations, *i.e.* its continued brokerage with Euro Trans necessitates that TQL had some degree of control over Shaneyfelt's unsatisfactory driving. There are also genuine issues of material fact as to this argument which is distinct from the Plaintiff's argument in *Schramm*, 341 F. Supp. 2d at 536. Doc. No. 121, ¶¶ 16-17.

Therefore, because sufficient evidence has been presented such that a reasonable jury could conclude that TQL is liable for negligent retaining, TQL's Motion for Summary Judgment will be DENIED in this respect. Because Plaintiff has presented sufficient evidence to survive this Motion for Summary Judgment, Plaintiff's claim for vicarious liability will also remain.

    *ii. Negligent Maintenance and Negligent Entrustment*

Plaintiff has no objection to TQL's Motion for Summary Judgment on the negligent maintenance or negligent entrustment claims. Doc. No. 103, 10 and 12. Therefore, TQL's Motion for Summary Judgment, as to these claims, will be GRANTED WITHOUT OBJECTION in this respect.

D. *Plaintiff's Claims for Punitive Damages*

The Court previously addressed Plaintiff's claims for punitive damages in its Opinion on Defendant Voyage's Motion to Dismiss. Doc. No. 49.

The Pennsylvania Supreme Court has held that "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchinson ex rel. Hutchinson v. Luddy,* 870 A.2d 722, 766 (Pa. 2005). To sustain a claim for punitive damages, a Plaintiff must "establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed, and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 772.

Defendants contend that Plaintiff has not produced evidence relative to Shaneyfelt's state of mind at the accident nor of any outrageous conduct as required. First, the Court believes that Plaintiff was not strictly required to produce evidence of Shaneyfelt's state of mind at the time of the accident. Rather, evidence such as knowledge of the risks of driving longer than the legal limits would be sufficient to support a jury award of punitive damages. The test is not state of mind at the exact moment of the accident, but rather, whether the Defendant's action or failure to act was "intentional, reckless, or malicious." There is sufficient evidence to survive this Motion for Summary Judgment because there is evidence of Defendants' intentional, reckless, or malicious actions. For example, Plaintiff has produced evidence that: (1) Kaszas and Euro Trans permitted Shaneyfelt to drive in excess of the permitted hours; (2) Shaneyfelt failed to maintain a safe distance between his tractor trailer and the decedent's vehicle; and (3) Defendants GDA, and TQL ignored safety issues in regard to the tractor trailer and Euro Trans. Doc. No. 102, ¶¶ 78-81. It is not for the Court to determine disputes such as whether Shaneyfelt's excess driving

was due to mistakes in his log books or negligence. These credibility and factual determinations are most properly made by a jury.

Defendants further contend that there is no evidence that Shaneyfelt's conduct was outrageous because Pennsylvania State Troopers at the scene determined that Mr. Shropshire was at fault for the accident. However, this conclusion is not unassailable. A reasonable jury could find that Mr. Shropshire's injuries were fatal because of Defendant Shaneyfelt's "outrageous" behavior, *i.e.* driving longer than legally permitted and closer to other vehicles than allowed. Notably, Judge McVerry, in the very case cited by Defendants, acknowledges that the United States Court of Appeals for the Third Circuit has explained that "a court should be reluctant [to] grant a motion for summary judgment when resolution of the dispositive issue required a determination of state of mind, for in such cases 'much depends upon the credibility of witnesses testifying as to their own states of mind and assessing credibility is a delicate matter best left to the fact finder.'" *Guerra v. New Prime, Inc.*, 2012 WL 2979064 at * 3 (W.D. Pa. Jul. 20) (McVerry, J.) (*quoting Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988) and *Watts v. Uni. of Delaware*, 622 F.2d 47, 52 (3d Cir. 1980)).

Defendants argue that Plaintiff must prove that the trucking company "possessed (1) a subjective appreciation of the risk of harm to which Plaintiff was exposed and that (2) it acted, or failed to act, as the case may be, in conscious disregard of that risk." *Guerra*, 2012 WL 2979064 at * 8. Without elaboration, Defendants GDA, Kaszas, and TQL contend that there is no evidence that would support an award of punitive damages against them. As previously noted, the Court disagrees. Plaintiff has presented evidence that could lead a reasonable jury to conclude that Defendants created a high degree of risk to fellow drivers on the road and/or were recklessly indifferent to the public's safety.

Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's claims for punitive damages will be DENIED as this matter is most appropriately determined by a jury.

## V. Conclusion

Plaintiff has advanced sufficient evidence against the Defendants to survive the contested portions of these Motions for Summary Judgment. There are multiple issues of credibility, factual determinations, and weighing of evidence that must be conducted by a jury. Therefore, Plaintiff's claims will proceed to jury trial scheduled to begin on October 28, 2013.

The MCS-90 endorsement attached to GDA's insurance policy will apply if there is any judgment against Defendant GDA.

An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:     All Registered ECF Counsel and Parties